**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RICHARD RAY FELIZ,<br><br>          Petitioner,<br><br>     v.<br><br>RON RACKLEY, Warden,<br><br>          Respondent. | Case No. 1:11-cv-01191-AWI-SKO-HC<br><br>ORDER SUBSTITUING WARDEN RON RACKLEY AS RESPONDENT<br><br>FINDINGS AND RECOMMENDATIONS TO DISMISS AND DENY THE PETITION FOR WRIT OF HABEAS CORPUS (DOC. 1), DENY PETITIONER'S REQUEST FOR AN EVIDENTIARY HEARING, ENTER JUDGMENT FOR RESPONDENT, AND DECLINE TO ISSUE A CERTIFICATE OF APPEALABILITY<br><br>**OBJECTIONS DEADLINE: THIRTY (30) DAYS** |

     Petitioner is a state prisoner proceeding pro se and in forma pauperis with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The matter has been referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and Local Rules 302 through 304. Pending before the Court is the petition, which was constructively filed on July 13, 2011.  Respondent filed an answer on October 13, 2011.  Petitioner filed a traverse on September 18, 2012, and then filed an additional document styled as a traverse on September 3, 2013.

1

I.   <u>Jurisdiction and Order Substituting Respondent</u>

Because the petition was filed after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the AEDPA applies in this proceeding.  <u>Lindh v. Murphy</u>, 521 U.S. 320, 327 (1997); <u>Furman v. Wood</u>, 190 F.3d 1002, 1004 (9th Cir. 1999).

The challenged judgment was rendered by the Superior Court of the State of California, County of Kern (KCSC), which is located within the territorial jurisdiction of this Court.  28 U.S.C. §§ 84(b), 2254(a), 2241(a), (d).  Further, Petitioner claims that in the course of the proceedings resulting in his conviction, he suffered violations of his constitutional rights.

Accordingly, the Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. §§ 2254(a) and 2241(c)(3), which authorize a district court to entertain a petition for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court only on the ground that the custody is in violation of the Constitution, laws, or treaties of the United States.  <u>Williams v. Taylor</u>, 529 U.S. 362, 375 n.7 (2000); <u>Wilson v. Corcoran</u>, 562 U.S. - , -, 131 S.Ct. 13, 16 (2010) (per curiam).

An answer was filed on behalf of Respondent, Domingo Uribe, Jr., who was named by Petitioner.  In the answer, Respondent admitted that pursuant to the judgment, Respondent had custody of Petitioner at the Centinela State Prison, Petitioner's institution of confinement when the petition and answer were filed.  (Doc. 16.) Petitioner thus named as a respondent a person who had custody of Petitioner within the meaning of 28 U.S.C. § 2242 and Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District

2

Courts (Habeas Rules).  See, <u>Stanley v. California Supreme Court</u>, 21 F.3d 359, 360 (9th Cir. 1994).  The fact that Petitioner was transferred to the Folsom State Prison (FSP) after the petition and answer were filed (see doc. 32 filed September 3, 2013) does not affect this Court's jurisdiction.  Jurisdiction attaches on the initial filing for habeas corpus relief; it is not destroyed by a transfer of the petitioner and the accompanying custodial change. <u>Francis v. Rison</u>, 894 F.2d 353, 354 (9th Cir. 1990) (<u>citing</u> <u>Smith v. Campbell</u>, 450 F.2d 829, 834 (9th Cir. 1971)).  Accordingly, the Court concludes that it has jurisdiction over the person of the Respondent.

In view of the fact that the warden at FSP is Ron Rackley, it is ORDERED that Ron Rackley, Warden of Folsom State Prison, be SUBSTITUTED as Respondent pursuant to Fed. R. Civ. P. 25.[1]

II.  <u>Procedural Summary</u>

On August 25, 2008, a Kern County jury found Petitioner guilty of one count of first degree murder in violation of Cal. Pen. Code § 187(a))2 and found true an allegation that Petitioner used a deadly or dangerous weapon within the meaning of Cal. Pen. Code § 12022(b)(1).  (LD 12,[2] CT 374-75.)  The trial court denied Petitioner's motion to relieve appointed trial counsel pursuant to <u>People v. Marsden</u>, 2 Cal.3d 118 (1970), on September 23, 2008, and proceeded to sentence Petitioner to an indeterminate term of twenty-

---

[1] Fed. R. Civ. P. 25(d) provides that when a public officer who is a party to a civil action in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending, the officer's successor is automatically substituted as a party. It further provides that the Court may order substitution at any time, but the absence of such an order does not affect the substitution.

[2] "LD" refers to documents lodged by Respondent.

1  five years to life, plus an additional year for the weapons

2  enhancement, and imposed various fines and fees.  (Id. at 371-75.)

3       The conviction was affirmed on appeal by the (CCA) Court of

4  Appeal of the State of California, Fifth Appellate District, on

5  November 12, 2009.  (LD 1.)   Petitioner filed a petition for review

6  in the California Supreme Court (CSC) in which he argued 1) the

7  trial court erred in its duty of inquiry during Petitioner's post-

8  verdict Marsden motion and 2) the trial court committed prejudicial

9  error when it admitted testimony by Darlene Vasquez that she had

10  made anonymous calls to one of the detectives on the case.  The

11  petition for review was denied by the CSC without a statement of

12  reasoning or citation of any authority on January 21, 2010.  (LD 2-

13  4.)

14       On February 16, 2011, Petitioner filed a petition for writ of

15  habeas corpus with the KCSC in which he argued prejudicial error in

16  the admission of testimony, ineffective assistance of counsel, and

17  erroneous denial of the Marsden motion.  (LD 5.)  On March 17, 2011,

18  the KCSC denied the petition in a reasoned decision.  (LD 6.)

19       On April 22, 2011, Petitioner filed a petition for writ of

20  habeas corpus in the CCA, alleging prejudicial error in the

21  admission of the anonymous calls, erroneous denial of the Marsden

22  motion, and the ineffective assistance of trial and appellate

23  counsel.  On June 2, 2011, the Fifth District Court of Appeal denied

24  the petition. (LD 7-8.)

25       On June 23, 2011, Petitioner filed a petition for writ of

26  habeas corpus in the CSC in case number S194272, in which Petitioner

27  alleged that the anonymous calls were improperly admitted, the trial

28  court erred in denying the Marsden motion, trial counsel provided

4

1  ineffective assistance, and appellate counsel also provided

2  ineffective assistance.  (LD 10.)  As of July 13, 2011,[3] when

3  Petitioner constructively filed the petition in the instant case

4  (doc. 1 at 6, 190), the CSC had not ruled on the petition.  However,

5  reference to the official website of the California courts shows

6  that the CSC summarily denied the petition for writ of habeas corpus

7  on November 30, 2011.[4]

8      III.  <u>Factual Summary</u>

9      In a habeas proceeding brought by a person in custody pursuant

10  to a judgment of a state court, a determination of a factual issue

11  made by a state court shall be presumed to be correct.  The

12  petitioner has the burden of producing clear and convincing evidence

13  to rebut the presumption of correctness.  28 U.S.C. § 2254(e)(1);

14  _____

15  [3] Dates of filing are calculated pursuant to the "mailbox rule."  Habeas Rule
3(d) provides that a paper filed by a prisoner is timely if deposited in the

16  institution's internal mailing system on or before the last day for filing.  The
rule requires the inmate to use the custodial institution's system designed for

17  legal mail; further, timely filing may be shown by a declaration in compliance
with 28 U.S.C. § 1746 or by a notarized statement setting forth the date of

18  deposit and verifying prepayment of first-class postage.  <u>Id.</u>  Habeas Rule 3(d)
reflects the "mailbox rule," initially developed in case law, pursuant to which a

19  prisoner's pro se habeas petition is "deemed filed when he hands it over to prison
authorities for mailing to the relevant court."  <u>Houston v. Lack</u>, 487 U.S. 266,

20  276 (1988); <u>Huizar v. Carey</u>, 273 F.3d 1220, 1222 (9th Cir. 2001).  The mailbox
rule applies to federal and state petitions alike.  <u>Campbell v. Henry</u>, 614 F.3d

21  1056, 1058-59 (9th Cir. 2010) (citing <u>Stillman v. LaMarque</u>, 319 F.3d 1199, 1201
(9th. Cir. 2003), and <u>Smith v. Ratelle</u>, 323 F.3d 813, 816 n.2 (9th Cir. 2003)).

22  The mailbox rule, liberally applied, in effect assumes that absent evidence to the
contrary, a legal document is filed on the date it was delivered to prison

23  authorities, and a petition was delivered on the day it was signed.  <u>Houston v.
Lack</u>, 487 U.S. at 275-76; <u>Roberts v. Marshall</u>, 627 F.3d 768, 770 n.1 (9th Cir.

24  2010); <u>Campbell v. Henry</u>, 614 F.3d 1056, 1058-59 (9th Cir. 2010); <u>Lewis v.
Mitchell</u>, 173 F.Supp.2d 1057, 1058 n.1 (C.D.Cal. 2001).

25  [4] The Court takes judicial notice of the docket as posted on the official website
pursuant to Fed. R. Evid. 201(b).  <u>United States v. Bernal-Obeso</u>, 989 F.2d 331,

26  333 (9th Cir. 1993); <u>Daniels-Hall v. National Education Association</u>, 629 F.3d 992,
999 (9th Cir. 2010).  It is appropriate to take judicial notice of the docket

27  sheet of a California court.  <u>White v Martel</u>, 601 F.3d 882, 885 (9th Cir. 2010),
<u>cert. denied</u>, 131 S.Ct. 332 (2010).  The address of the official website of the

28  California state courts is www.courts.ca.gov.

<u>Sanders v. Lamarque</u>, 357 F.3d 943, 947-48 (9th Cir. 2004).  This presumption applies to a statement of facts drawn from a state appellate court's decision.  <u>Moses v. Payne</u>, 555 F.3d 742, 746 n.1 (9th Cir. 2009).  The following statement of facts is taken from the opinion of the CCA in <u>People v. Richard Ray Feliz</u>, no. F056173, filed on November 12, 2009, as reported at <u>People v. Feliz</u>, 2009 WL 3768847, *1-*2 (Nov. 12, 2009).[5]

### *FACTUAL SUMMARY*

In 1994, Feliz had a girlfriend named Darlene Vasquez. Although the couple did not live together, Feliz was "always" at Vasquez's apartment. Feliz was extremely jealous of Vasquez. The morning of the murder, November 4, 1994, Feliz accused Vasquez of wanting to be with Shiloh Rodriguez. Shiloh Rodriguez and his older brother Chris Rodriguez FN2 were friends with Feliz and spent time together.

> FN2. We will refer to the victim and his brother by first names to distinguish between the two.

On the evening of November 4, Feliz, Shiloh, and two others, spent the evening together drinking beer. Later, the group dispersed. About 8:30 p.m., Chris received a phone call from Shiloh who sounded distressed, asking Chris to come pick him up at Feliz's mother's house as soon as possible. Chris was unable to do so. This was the last time Chris spoke with Shiloh.

On November 4, 1994, between 11:30 p.m. and midnight, Shiloh's body was found at the Union Cemetery in Bakersfield. He had been stabbed 77 times. The weapon used was a single-edged blade approximately five to five-and-a-half inches in length.

The physical evidence at the scene included a blood trail running from the body to the southeast and a number of shoe tracks. Feliz's mother's house was located several blocks southeast of the cemetery. The shoe tracks found at the cemetery were similar to the tread pattern made by

---

[5] The copy of the opinion lodged with the Court by Respondent is incomplete.

Feliz's shoes. Vasquez testified at trial that, the morning after the murder, she saw Feliz clean his shoes in the bathroom with bleach. Despite this effort, the shoes tested positive for human blood. The forensic criminalist testified that the DNA sample extracted from the shoe was consistent with DNA that had been exposed to bleach.

During the initial investigation, Vasquez claimed that Feliz was with her the entire evening. Later, she changed her testimony and stated that the night of the murder, Feliz wakened her. He said "[L]ook, bitch, look what you did, you made me kill my best friend." Feliz also said, "anybody that was to mess with what belonged to him was gonna be handled." He accused Vasquez of "fucking" Shiloh and called Vasquez a "lying bitch" when she denied it. Vasquez heard Feliz say he had lost his knife.

Feliz returned to the room about 30-45 minutes later. The two talked until they went to sleep. The next day, Vasquez saw Feliz and her brother Armondo Ramos, who had been at the apartment when Feliz returned the night before, kick dirt over a pile of burnt clothing in a field located behind Vasquez's apartment. Ramos would later tell police that Feliz had admitted killing Shiloh and that he had seen Feliz burn clothes behind the apartment the night of the murder. At trial, Ramos claimed he remembered nothing. Before the first trial, however, Ramos told police his life had been threatened repeatedly and that he was terrified. He told police he would not say anything if called to testify.

The investigating officers found the pile of burned clothes and a burned towel behind Vasquez's apartment. Vasquez testified at trial that she recognized in the pile the clothes Feliz had been wearing when he came home and a towel from the bathroom. Later tests on the clothing showed the presence of human blood matching Shiloh's DNA pattern.

People v. Feliz, 2009 WL 3768847, *1-*2.

    IV.   Erroneously Admitted Testimony regarding Anonymous Telephone Calls

Petitioner argues that his conviction was obtained by the erroneous introduction of Darlene Vasquez's testimony concerning her

anonymous telephone calls to law enforcement that constituted inadmissible hearsay under Cal. Evid. Code §§ 791 and 1235 because there was no prior consistent statement and no charge of recent fabrication, and the statements were not timely revealed in discovery.  Petitioner asserts that the anonymous statements were the only or principal difference between the evidence admitted at his first trial, which resulted in a mistrial, and the evidence admitted at his second trial, which resulted in conviction. Further, the evidence was decisive because the jury in the second trial reached the verdict after receiving a requested rereading of the testimony of Vasquez and a DNA expert. (Pet., doc. 1, 4, 14-20).

Respondent contends that these allegations do not state a federal claim, and in any event the state court decision did not contravene or involve an unreasonable application of federal law because there is no clearly established federal law requiring the exclusion of the evidence.  (Ans., doc. 16, 17-20.)

In the traverse, Petitioner alleges that the admission of Vasquez's testimony regarding an anonymous telephone call she made to a detective resulted in the admission of prejudicial hearsay and violated Petitioner's Sixth Amendment right to a fair trial. However, neither a federal fair trial claim nor a Confrontation Clause claim was raised in the petition for review (LD 3) or in the petition for writ of habeas corpus filed in the CSC (LD 10).  The Court declines to consider new and unexhausted claims set forth in

8

Petitioner's second traverse.  See, Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994), cert. den., 514 U.S. 1026 (1995).

A.   Standard of Decision and Scope of Review

Title 28 U.S.C. § 2254 provides in pertinent part:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Clearly established federal law refers to the holdings, as opposed to the dicta, of the decisions of the Supreme Court as of the time of the relevant state court decision.  Cullen v. Pinholster, - U.S. -, 131 S.Ct. 1388, 1399 (2011); Lockyer v. Andrade, 538 U.S. 63, 71 (2003); Williams v. Taylor, 529 U.S. 362, 412 (2000).

A state court's decision contravenes clearly established Supreme Court precedent if it reaches a legal conclusion opposite to, or substantially different from, the Supreme Court's or concludes differently on a materially indistinguishable set of facts.  Williams v. Taylor, 529 U.S. at 405-06.  The state court need not have cited Supreme Court precedent or have been aware of

it, "so long as neither the reasoning nor the result of the state-court decision contradicts [it]."  Early v. Packer, 537 U.S. 3, 8 (2002).  A state court unreasonably applies clearly established federal law if it either 1) correctly identifies the governing rule but applies it to a new set of facts in an objectively unreasonable manner, or 2) extends or fails to extend a clearly established legal principle to a new context in an objectively unreasonable manner. Hernandez v. Small, 282 F.3d 1132, 1142 (9th Cir. 2002); see, Williams, 529 U.S. at 407.  An application of clearly established federal law is unreasonable only if it is objectively unreasonable; an incorrect or inaccurate application is not necessarily unreasonable.  Williams, 529 U.S. at 410.  A state court's determination that a claim lacks merit precludes federal habeas relief as long as fairminded jurists could disagree on the correctness of the state court's decision.  Harrington v. Richter, 562 U.S. -, 131 S.Ct. 770, 786 (2011).  Even a strong case for relief does not render the state court's conclusions unreasonable. Id.  To obtain federal habeas relief, a state prisoner must show that the state court's ruling on a claim was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Id. at 786-87.  The standards set by § 2254(d) are "highly deferential standard[s] for evaluating state-court rulings" which require that state court decisions be given the benefit of the

10

doubt, and the Petitioner bear the burden of proof.  Cullen v. Pinholster, 131 S.Ct. at 1398.  Habeas relief is not appropriate unless each ground supporting the state court decision is examined and found to be unreasonable under the AEDPA.  Wetzel v. Lambert, -- U.S.--, 132 S.Ct. 1195, 1199 (2012).

In assessing under section 2254(d)(1) whether the state court's legal conclusion was contrary to or an unreasonable application of federal law, "review... is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 131 S.Ct. at 1398.  Evidence introduced in federal court has no bearing on review pursuant to § 2254(d)(1).  Id. at 1400. Further, 28 U.S.C. § 2254(e)(1) provides that in a habeas proceeding brought by a person in custody pursuant to a judgment of a state court, a determination of a factual issue made by a state court shall be presumed to be correct; the petitioner has the burden of producing clear and convincing evidence to rebut the presumption of correctness.  A state court decision on the merits based on a factual determination will not be overturned on factual grounds unless it was objectively unreasonable in light of the evidence presented in the state proceedings.  Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

With respect to each claim, the last reasoned decision must be identified in order to analyze the state court decision pursuant to 28 U.S.C. § 2254(d)(1).  Barker v. Fleming, 423 F.3d 1085, 1092 n.3

11

(9th Cir. 2005); <u>Bailey v. Rae</u>, 339 F.3d 1107, 1112-13 (9th Cir. 2003).  Here, the last reasoned decision on this claim was the decision of the CCA filed on November 12, 2009.

Where a state court did not reach the merits of a claim, federal habeas review is not subject to the deferential standard that applies under § 2254(d) to "any claim that was adjudicated on the merits in State court proceedings"; rather, the claim is reviewed <u>de novo</u>.  <u>Cone v. Bell</u>, 556 U.S. 449, 472 (2009).

B.   The State Court Decision

The CCA addressed the issue as follows:

***DISCUSSION***

**I. *Admission of Vasquez's phone calls***

At trial, Vasquez was allowed to testify, over defense counsel's objection, that she had made two anonymous calls to an unnamed detective in 1994, later identified by the parties as Detective Legg, in which Vasquez said that she had information about the murder. The first time she left a message on the detective's answering machine. The second time, she claims she actually spoke with the detective. She testified that she did not identify herself, but told the detective where Feliz lived and the name of the victim. Vasquez said she had more information so long as the police could keep Feliz away from her. These statements were obviously inconsistent with her initial statement to police that Feliz was with her all night. She said she lied initially to protect Feliz. The trial court admitted this testimony on the ground that, although hearsay, it was admissible as a prior consistent statement for the limited purpose of impeaching the witness. Feliz argues this was error. We agree, but conclude there is no prejudice.

<u>People v. Feliz</u>, 2009 WL 3768847, *2.

The state court analyzed whether the evidence met the requirements for admission as an exception to the hearsay rule

12

(prior consistent statement) pursuant to Cal. Evid. Code §§ 791 and 1236.  The court concluded it was not admissible because Vasquez's prior consistent statement (the phone call evidence) was not made <u>before</u> her alleged inconsistent statement (the alibi evidence), and because there was no basis for a charge of recent fabrication or intervening influence by an improper motive or bias.  The state court noted that the facts of the present case fall outside the parameters of the exception for prior consistent statements, and thus the statement should not have been admitted.  <u>People v. Feliz</u>, 2009 WL 3768847, *2-*4.

However, the CCA then set concluded that no prejudice resulted from the error:

> Although the trial court erred in admitting the prior consistent statement, we conclude there is no prejudice. There was ample proof of guilt independent of Vasquez's testimony, including the pile of burned clothing behind Vasquez's apartment that tested positive for human blood matching Shiloh's DNA and the blood found on Feliz's shoes which were similar in tread pattern to the shoe tracks found at the scene of the murder. There was testimony from several witnesses putting Shiloh with Feliz earlier in the evening. In addition, Ramos told police that Feliz came home with blood on his clothes.
>
> Vasquez was cross-examined at both trials regarding the changes in her story and the inconsistencies in her testimony at the first and second trials. There was a stipulation at trial that Detective Legg had no record or memory of the alleged anonymous phone calls. Consequently, Vasquez's credibility was well framed for the jury. The jury was instructed that the phone call evidence could only be considered for the limited purpose of determining whether Vasquez was telling the truth and not for the truth of the statements themselves. We will presume that

13

the jury followed the court's instruction. (*People v. Lindberg* (2008) 45 Cal.4th 1, 26.)

For all these reasons, we conclude that any error in admitting the out-of-court statements made during the two anonymous phone calls did not result in prejudice to Feliz.

People v. Feliz, 2009 WL 3768847, *4.

### C. Analysis

As Respondent contends, Petitioner's claim of erroneous admission of the evidence under California's Evidence Code does not state a federal claim that would entitle Petitioner to relief in a proceeding pursuant to 28 U.S.C. § 2254. Thus, insofar as Petitioner contends that the state court's application of Cal. Evid. Code §§ 791 and 1236 was merely erroneous, Petitioner's claim must be dismissed.

A federal court reviewing a habeas petition pursuant to 28 U.S.C. § 2254 has no authority to review alleged violations of a state's evidentiary rules. Jammal v. Van de Kamp, 926 F.2d 918, 919 (9th Cir. 1991). Because federal habeas relief is available to state prisoners only to correct violations of the United States Constitution, federal laws, or treaties of the United States, federal habeas relief is not available to retry a state issue that does not rise to the level of a federal constitutional violation. 28 U.S.C. § 2254(a); Wilson v. Corcoran, 562 U.S. — , 131 S.Ct. 13, 16; Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). In a habeas corpus proceeding, this Court is bound by the California Supreme Court's

14

interpretation of California law unless the interpretation is deemed untenable or a veiled attempt to avoid review of federal questions. Murtishaw v. Woodford, 255 F.3d 926, 964 (9th Cir. 2001).

Here, there is no indication of any attempt to avoid federal review.  This Court is thus bound by the state court's determinations concerning the interpretation and application of the state evidentiary law.

As to the state court's conclusion that Petitioner suffered no prejudice, to be entitled to relief in habeas corpus proceedings, a petitioner generally must show that a trial error resulted in actual prejudice.  Brecht v. Abrahamson, 507 U.S. 619, 637 (1993). Constitutional trial errors occurring during the presentation of evidence to the jury are generally subject to harmless error analysis, which is tested on habeas corpus review by determining whether any error had a substantial and injurious effect or influence in determining the jury's verdict.  Id. (applying the standard to habeas review of Doyle violations concerning introduction of a defendant's silence after Miranda warnings). Here, the state court concluded that the error was not prejudicial under state law standards.

If Petitioner's claim regarding prejudice suffered from the admission of the evidence were liberally construed to constitute a claim of fundamental unfairness violating basic procedural due process, Petitioner is entitled to relief only if the evidence alleged to have been prejudicial was so arbitrary or prejudicial that its admission rendered the trial fundamentally unfair and violated fundamental conceptions of justice.  Perry v. New Hampshire, 132 S.Ct. 716, 723 (2012); Estelle v. McGuire, 502 U.S.

15

at 67-69; Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009).

Here, there was ample physical evidence as well as multiple sources of testimonial evidence in support of Petitioner's guilt. Vasquez's denial that she made the recorded call and her unsupported claim that she made the other, undocumented calls were collateral to her direct testimony concerning not only the relationships among the victim, Petitioner, and Vasquez, but also Vasquez's own observations of Petitioner on the day and night of the homicide and of Petitioner's conduct thereafter.  The state court's conclusion that Petitioner suffered no prejudice warranting relief was not inconsistent with federal due process standards, which require prejudice so extreme that it violates fundamental conceptions of justice.

Further, even the clearly erroneous admission of evidence that renders a trial fundamentally unfair may not permit the grant of habeas relief unless forbidden by clearly established federal law as established by the Supreme Court.  Holley v. Yarborough, 568 F.3d at 1101.  The Supreme Court has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ. Absent such clearly established federal law, the state court's ruling was not an unreasonable application.  Id. (citing Carey v. Musladin, 549 U.S. 70, 77 (2006)).

Admission of evidence violates due process only if there are no permissible inferences that a jury may draw from it, and the evidence is of such quality as necessarily prevents a fair trial. Boyde v. Brown, 404 F.3d 1159, 1172-73 (9th Cir. 2005) (quoting Jammal v. Van de Kamp, 926 F.2d 918, 920)).  Here, evidence that

16

Vasquez provided Petitioner with an alibi but anonymously reported him warranted an inference of bias or fear on the part of Vasquez. Further, in light of the nature of Vasquez's testimony that inculpated Petitioner, her testimony as to the anonymous calls was not sufficiently inflammatory or confusing to prevent a fair trial.

In summary, it will be recommended that Petitioner's claim concerning the admission of Vasquez's testimony concerning the anonymous calls be dismissed and denied.

V.   <u>Denial of the Marsden Motion</u>

Petitioner alleges that the trial court erroneously denied his post-judgment motion for discharge and substitution of his appointed trial counsel because the court failed to inquire properly into counsel's failure to investigate the perjury of a Darlene Vasquez, who testified that Petitioner assaulted someone.  (Doc. 1 at 4.) Petitioner further alleges that documentation he later obtained shows that at the time she testified Petitioner was in her presence, he was actually in custody (in custody in El Centro from May 4, 1994, through August 15, 1994, and in custody on the present offense from November 6, 1994, two days after the homicide, until June 3, 1997).  Petitioner argues that the Court's failure to inquire into counsel's failure to investigate, obtain the documentary evidence, and move for a new trial substantially impaired his right to counsel and left a silent record.  (Doc. 1, 20-81.)

Respondent contends that the state court's decision upholding the denial of the <u>Marsden</u> motion was not contrary to or an unreasonable application of clearly established federal law. Further, to the extent that Petitioner relies on matter not before the state court, the matter should be disregarded because the Court

17

is limited to review of the record before the state court at the time of the decision.  (Doc. 16, 20-25.)

### A.   The State Court Decision

The pertinent portion of the CCA's decision is as follows:

**II. Alleged *Marsden* error**

Feliz next contends that the trial court erred in denying his postverdict motion for new counsel. According to Feliz, the trial court was obligated to inquire further into the reasons why Feliz was dissatisfied with his attorney. We reject this contention as well.

*People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*) imposes four requirements on the trial court. First, if a "defendant complains about the adequacy of appointed counsel," the trial court has the duty to "permit [him] to articulate his causes of dissatisfaction and, if any of them suggest ineffective assistance, to conduct an inquiry sufficient to ascertain whether counsel is in fact rendering effective assistance." (*People v. Eastman* (2007) 146 Cal.App.4th 688, 695.) A defendant is entitled to relief only if he can show inadequate representation or that the attorney-client relationship has irreparably broken down. (*People v. Smith* (1993) 6 Cal.4th 684, 696; *People v. Crandell* (1988) 46 Cal.3d 833, 854.) Further, new counsel should not be appointed without the proper showing. Whether the proper showing has been made is reviewed for an abuse of discretion. (*People v. Smith, supra*, at p. 696.)

Feliz sent a letter to the trial court postconviction complaining that "some man from probation" had come to interview him. He also told the court that there had been "foul doings" and "a lot of purjury" in his trial. He made vague references to needing school records and trial transcripts (which he later admitted he had received). As a result of this letter, on the date set for imposition of judgment, the trial court conducted a *Marsden* hearing.

The court began by asking Feliz about the nature of the complaints. They included (1) not having his prison records; (2) not having Vasquez's school records; (3) not subpoenaing Vasquez's mother; (4) the failure to include all buildings on a sketch that represented Vasquez's apartment complex; (5) the failure to emphasize

18

inconsistencies in the testimony between the first and second trials; (6) the lack of an opportunity to cross-examine Detective Legg; (7) the failure to elicit evidence about the way police controlled individuals waiting for interviews when more than one individual was waiting; and (8) the failure to point out that Ramos received a deal for cooperating with police. The court methodically went through each of Feliz's complaints to make sure it understood what Feliz was claiming. When the court needed help in understanding a complaint, the court asked counsel for help. In a few instances, the court asked for counsel's response.

Feliz's letter and his comments at the *Marsden* hearing were expressions of dissatisfaction with the trial and its result. At no time did Feliz ask, directly or indirectly, to have new counsel appointed or to have his present counsel removed. When a defendant does not request substitute counsel, it is not necessary under *Marsden* to determine the factual basis of defendant's claim of inadequate representation. (*People v. Gay* (1990) 221 Cal.App.3d 1065, 1070.)

Next, we disagree that the trial court inadequately investigated Feliz's claims. Feliz cites *People v. Cruz* (1978) 83 Cal.App.3d 308, 315-316, in which the appellate court said that a trial court's mere listening to a defendant's reasons for claiming inadequate counsel is not sufficient under *Marsden* when the circumstances require that the trial court conduct a careful inquiry into the defendant's reasons for requesting substitution of counsel. (*People v. Cruz, supra,* at pp. 317-318.) The key language here is "when the circumstances require."

In *Cruz*, there were circumstances requiring further inquiry by the court. The trial court in *Cruz* listened to the defendant, without interruption, as the defendant explained why he had decided to represent himself. The defendant listed a series of concerns about the public defender's pretrial representation, generally raising allegations of significant misconduct but offering no factual support for his allegations. The trial court did not inquire about specific facts underlying the concerns, nor did it ask the public defender for a response. This was error because the trial court ruled without fully understanding whether the allegations of misconduct were true. If true, representation was inadequate and new

19

counsel should have been appointed rather than allowing the defendant to represent himself. Likewise in *People v.. Munoz* (1974) 41 Cal.App.3d 62, another case relied upon by Feliz, the trial court refused to inquire into the defendant's claim that his representation was inadequate. (*Id.* at pp. 64-65.) In both cases, the trial court allowed the defendant to speak, but made no attempt to determine whether there was any substance to the claims made even though the circumstances warranted further inquiry.

In contrast, the court here made a number of inquiries to clarify Feliz's statements and sought specific responses from counsel on a number of occasions. Feliz was given ample opportunity to offer specific grounds to justify substitution of counsel, but with few exceptions, nothing Feliz said warranted further inquiry. For example, when Feliz claimed that a witness had not been located, the court clarified who the witness was (Vasquez's mother) and asked counsel if the witness had been on the witness list. She was not. The mother had been present on the night of the murder. Defense counsel told the court that he was "having a little problem remembering what happened with [the mother] ...-I had a report from an investigator and I do not recall locating [the mother]." Whether or not the mother was called as a witness, counsel tried to locate her and received input about her availability before trial. Feliz made no showing in the trial court that the witness had helpful information. The other two people in the apartment did not offer testimony that would benefit Feliz. As a result, Feliz did not and cannot show that counsel's failure to call the witness resulted in inadequate representation.

When Feliz claimed that Detective Legg had not been called to testify, defense counsel explained that Legg had been located in San Diego and that Legg said he did not have any recollection of receiving phone calls from Vasquez. This evidence did come in via a stipulation at trial; it was favorable to Feliz.

Another complaint raised by Feliz was that counsel failed to present evidence about how police investigators handle people waiting to be interviewed, either as suspects or witnesses. According to Vasquez, Feliz yelled to her, "please don't do this" while she was waiting to be interviewed, which is why she said Feliz had been with her all night. Feliz said that, although defense counsel in

20

the first trial had gotten "just a description of the room," it would "have probably been better if we would have got the process of it...." Defense counsel explained that he presented this evidence when he read extensive testimony from the record of the first trial,FN3 establishing that witnesses would not be allowed to yell to others waiting to be interviewed. This response indirectly informed the court that defense counsel did have copies of the transcripts from the first trial since they were used to read the prior testimony into the record at the close of the second trial.

> FN3. Although the trial court appeared to have forgotten there had been a first trial, our review of the record suggests this was a momentary lapse. The record is full of references to the first trial.

Feliz argued there was no evidence that Ramos had a deal from the prosecution. Yet, defense counsel explained that evidence had been submitted regarding the case where Ramos allegedly received favorable treatment. Other claims made by Feliz could be discounted by the trial court without input from counsel. Feliz argued that transcripts from the first trial could have been used to impeach the testimony of witnesses. The discrepancies noted by Feliz, however, were either insignificant because they were only tangentially relevant to the issues at trial (such as how long Feliz and Vasquez had known one another) or involved issues collateral to the issue of guilt (e.g., how far the blood trail led from the cemetery, 50 or 200 yards). Defense counsel did impeach Vasquez on the issue of whether she actually saw Feliz use bleach to clean his shoes. He did such a thorough job that Vasquez ultimately admitted she had not seen Feliz actually use the bleach to clean his shoes.

Finally, even if the trial court abused its discretion in denying the *Marsden* motion, Feliz has failed to show how he was harmed by the denial. In reviewing *Marsden* errors, an appellant is not entitled to relief without a showing of prejudice. (*People v. Chavez* (1980) 26 Cal.3d 334, 348-349.) Feliz's list of complaints was insufficient to show that his right to counsel would be substantially impaired without a substitution of counsel at his sentencing hearing.

21

People v. Feliz, 2009 WL 3768847, *4-*7.

    B.   Analysis

    The Sixth and Fourteenth Amendments guarantee that an accused is entitled to the effective assistance of counsel acting as an advocate for the accused at every stage of the criminal proceedings. Gideon v. Wainwright, 372 U.S. 335, 345 (1963).  Even though an accused has counsel, his right to counsel may nevertheless be violated, such as where counsel fails to function in the active role of an advocate, Entsminger v. Iowa, 386 U.S. 748, 751 (1967), counsel has an actual conflict of interest that adversely affects the attorney's performance, Cuyler v. Sullivan, 446 U.S. 335, 348-50 (1980), or counsel provides ineffective assistance measured by the standard of Strickland v. Washington, 466 U.S. 668, 687-94 (1984).

    The Court is not aware of any decision of the Supreme Court that holds that failure to conduct an inquiry into a motion to remove defense counsel or the failure to grant such a motion ultimately constituted a denial of the right to counsel.  Arguably, no clearly established federal law requires an inquiry or habeas relief in the absence of an inquiry.  Thus, the state court's denial of Petitioner's motion would not be an unreasonable application of clearly established federal law because there was no specific legal rule squarely established by the Supreme Court.  See, Knowles v. Mirzayance, 556 U.S. 111, 122 (2009).  Petitioner's allegation that the trial court erred in denying his motion to remove counsel does not present a cognizable claim on habeas review.

    In Schell v. Witek, 218 F.3d 1017 (9th Cir. 2000), the court reviewed the claim of a petitioner who alleged that the trial court had denied his motion to substitute counsel without conducting an

22

inquiry adequate under People v. Marsden into his complaints of an irreconcilable conflict and breakdown in communications with his counsel.  The court noted that the denial without a hearing of a motion to substitute appointed counsel based on allegations of an irreconcilable conflict implicates the defendant's Sixth Amendment right to counsel and thus is properly considered in a habeas petition.  Id. at 1023 (citing Bland v. California Dep't of Corrections, 20 F.3d 1469, 1475 (9th Cir. 1994) and Hudson v. Rushen, 686 F.2d 826, 827-28 (9th Cir.1982)).  The court further noted the focus of the analysis in a § 2254 proceeding is whether the petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.A. § 2254(a).  Id. at 1025.  The Court emphasized that the question was whether the grounds for the substitution (there a conflict) prevented the effective assistance of counsel, id. at 1026, and it described the appropriate analysis for a court to undertake in evaluating a claim of Marsden error in a proceeding pursuant to § 2254 as follows:

> Thus, the ultimate constitutional question the federal courts must answer here is not whether the state trial court "abused its discretion" in not deciding [the petitioner's] motion, but whether this error actually violated [the petitioner's] constitutional rights in that the conflict between [the petitioner] and his attorney had become so great that it resulted in a total lack of communication or other significant impediment that resulted in turn in an attorney-client relationship that fell short of that required by the Sixth Amendment.

Schell v. Witek, 218 F.3d at 1026.

Here, the state court noted that no formal motion to substitute counsel was before the trial court, yet the trial court proceeded to listen to and to identify Petitioner's complaints, give Petitioner opportunities to offer more information in terms of grounds to

justify substitution of counsel, and inquired of counsel in some
instances.  The state court decision reflected that some of
Petitioner's claims concerning the state of the evidence were cured
or neutralized by the admission of other evidence, such as the
stipulation that Detective Legg did not recall having received any
calls from Vasquez, the testimony from the first trial concerning
the interaction between Petitioner and Vasquez before Vasquez was
interviewed, and evidence concerning Ramos's favorable treatment by
law enforcement.  Consideration of the body of evidence against
Petitioner shows that the state court reasonably concluded that some
of Petitioner's complaints related to collateral issues that were
not sufficiently material to result in harm, such as the failure to
include all buildings in the apartment complex on a sketch, or the
failure to impeach with inconsistencies in testimony in the two
trials relating to the length of time Petitioner and Vasquez had
known each other or the precise length of the blood trail leading
from the cemetery.  Petitioner's counsel did falter with respect to
his command of the status of the investigation concerning Vasquez's
mother.  However, the record supports the conclusion of the state
court that in the absence of a further showing, because the evidence
of Vasquez and her brother (the other persons who had been present
at the house with the mother when Petitioner returned home after the
homicide) had not been exculpatory for Petitioner, Petitioner had
not shown that the failure to present Vasquez's mother's testimony
resulted in any prejudice to Petitioner.

     With respect to Petitioner's complaint that his counsel had not
obtained or used Petitioner's prison records, Petitioner apparently
wanted the information to impeach Vasquez's recollection of the date

of a previous assault.  Vasquez testified that around June or July

1994 she was at a high school with Petitioner, who out of jealousy

threatened and hit another male in Vasquez's presence.  However, she

testified it happened in about June or July; she also testified she

and Petitioner were getting together in mid-1994 after Petitioner

had been released from the California Youth Authority (CYA) in about

June or July 1994; she was sure they were together by her birthday,

which was August 20, 1994.  (LD 14, I RT 36-39, 42-45, 230.)

Petitioner seeks to use what he characterizes as new evidence

that would show he was committed to CYA on August 20, 1993; released

on juvenile parole in early February 1994; completed a custodial

drug program from May 4, 1994 through August 5, 1994; and was "AWOL"

from August 13, 1994 through November 6, 1994, when he was arrested

for the homicide.  (Doc. 1, 103-107.)  As Respondent notes, the

review of the state court's decision should proceed solely on the

record before the state court pursuant to Cullen v. Pinholster, 131

S.Ct. at 1398.  However, in any event, given the inexact nature of

Vasquez's assessment of the time of the previous confrontation, and

further considering the possibility that the previous confrontation

had occurred before early May 1994 or in August 1994 after

Petitioner's release, the impeachment value of this new evidence

would have been slight.  The trial court concluded in an objectively

reasonable manner that Petitioner had not shown that any prejudice

had resulted from the trial court's Marsden proceedings and ruling.

In summary, the facts as stated by the CCA support a finding

that Petitioner did not show that he suffered from a conflict of

interest, a complete breakdown of the attorney-client relationship,

the ineffective assistance of counsel, or other grounds that would

prevent the effective representation of counsel required by the

Sixth and Fourteenth Amendment and would require further inquiry by

the trial court or the substitution of counsel.  Accordingly, it

will be recommended that Petitioner's claim concerning the denial of

his Marsden motion be dismissed and denied.

    VI.   Ineffective Assistance of Trial Counsel

    Petitioner alleges that he suffered the ineffective assistance

of counsel (IAC) when his trial counsel failed to have laboratory

reports and was ambushed by evidence.  (Doc. 1 at 5.)  Petitioner

states that the prosecutor received in May 1995 FBI lab reports

showing what Petitioner characterizes as insufficient DNA evidence.

(Id. at 8.)  Further, counsel did not know that Vasquez's mother,

who was allegedly present on the night of the homicide when

Petitioner confessed, had been found.  (Id. at 83-91.)  Petitioner

points to the report of the defense investigator that showed that

the mother had been contacted, recalled the incident, and admitted

having spoken with law enforcement in 1994 about the incident.

(Trav., doc. 27, 11.)

    Respondent responds that the claim is not exhausted because the

CSC had not ruled on the claim.  However, as previously noted, the

CSC has now denied the petition in which this claim was raised.

Respondent further contends that regardless of the adequacy or

timeliness of Petitioner's exhaustion, Petitioner's IAC claim may be

denied because it is not colorable.

    Generally a habeas petitioner will not be afforded relief in

the courts unless he has exhausted available state judicial and

administrative remedies.  Preiser v. Rodriguez, 411 U.S. 475, 494-95

(1973).  However, a court may reach the merits of a claim even in

the absence of exhaustion where it is clear that the claim is not colorable.  28 U.S.C. § 2254(b)(2) (providing that an application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state); Granberry v. Greer, 481 U.S. 129, 134-35 (1987); Cassett v. Stewart, 406 F.3d 614, 624 (9th Cir. 2005).

A.   Legal Standards

The law governing claims concerning ineffective assistance of counsel is clearly established for the purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d).  Premo v. Moore, - U.S. -, 131 S.Ct. 733, 737-38 (2011); Canales v. Roe, 151 F.3d 1226, 1229 n.2 (9th Cir. 1998).

To demonstrate ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments, a convicted defendant must show that 1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms in light of all the circumstances of the particular case; and 2) unless prejudice is presumed, it is reasonably probable that, but for counsel's errors, the result of the proceeding would have been different.  Strickland v. Washington, 466 U.S. 668, 687-94 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994).

In determining whether counsel's conduct was deficient, a court should consider the overall performance of counsel from the perspective of counsel at the time of the representation. Strickland, 466 U.S. at 689.  There is a strong presumption that counsel's conduct was adequate and within the exercise of reasonable

professional judgment and the wide range of reasonable professional assistance. Strickland, 466 U.S. at 688-90.

In determining prejudice, a reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding. Strickland, 466 U.S. at 694. In the context of a trial, the question is thus whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt. Strickland, 466 U.S. at 695. This Court must consider the totality of the evidence before the fact finder and determine whether the substandard representation rendered the proceeding fundamentally unfair or the results thereof unreliable. Strickland, 466 U.S. at 687, 696. A court need not address the deficiency and prejudice inquiries in any given order and not address both components if the petitioner makes an insufficient showing on one. Strickland, 466 U.S. at 697.

Here, even without considering the DNA evidence, there was strong evidence against Petitioner, including Vasquez's testimony that Petitioner had angrily accused her of infidelity with the victim earlier on the day of the homicide, Petitioner's history of extreme jealousy, the nature and number of the victim's wounds, Petitioner's having been with the victim the evening of the murder, Petitioner's custom of carrying a knife, Vasquez's testimony that Petitioner said angrily to her upon his return home the night of the homicide that Vasquez had made him kill his best friend, Petitioner's return home without his knife and with blood on his shoes and clothing, Petitioner's use of bleach to clean his shoes, and Petitioner's attempt to destroy and conceal the clothes he had worn. Likewise, Petitioner failed to show any prejudice from the

failure to develop Vasquez's mother as a witness because there was no showing she could offer favorable testimony.  Darlene Vasquez testified that on the night of the homicide, her mother had shared a bed with Vasquez and Petitioner.  While this warrants an inference that the mother was at the house for the rest of the night and may have had information, there is no basis for an inference that she had any information that would be exculpatory as to Petitioner or impeaching as to any prosecution witness.

In summary, even if a de novo standard of review is used, the record reflects that Petitioner did not suffer sufficient prejudice from trial counsel's conduct.  Counsel's conduct did not render the proceeding fundamentally unfair or the results unreliable.  Accordingly, it will be recommended that Petitioner's IAC claim regarding trial counsel be denied.

VII.   Ineffective Assistance of Appellate Counsel

Petitioner alleges he suffered the ineffective assistance of appellate counsel in connection with the issues of late discovery of false testimony and lab reports.  (Doc. 1 at 5.)  Petitioner relies on the statement of appellate counsel made in the course of augmentation proceedings in the CCA that trial counsel had told him that belated disclosure of a laboratory report undermined defense strategy with respect to the opening statement.  (Doc. 27, 25.)

As previously noted, confusion or unawareness of counsel with respect to any laboratory report has not been shown to have had a prejudicial effect.  There is no basis for a conclusion that it rendered the proceeding fundamentally unfair or caused the results of the trial to be unreliable.  Likewise, the absence of records of Petitioner's incarceration does not appear to have had any

29

prejudicial effect because his confinement history was of limited
impeachment value as to Vasquez, who had already been significantly
impeached by not only her own offering of an inconsistent and
apparently false alibi for Petitioner, but also the absence of any
record consistent with her specific claim of having made anonymous
telephone calls.  Under the circumstances, it has not been shown
that the failure to raise the issues was not based on an informed
and reasonable tactical decision by appellate counsel not to raise
the issues.  Further, it does not appear that a claim of ineffective
assistance of trial counsel would have been successful.  Cf. James
v. Borg, 24 F.3d 20, 27 (9th Cir. 1994) (failure to raise the issue
of sufficiency of the evidence is not prejudicial where there was
overwhelming evidence of guilt; failure to make a  motion which
would not have been successful is not ineffective assistance of
counsel).  Accordingly, it will be recommended that Petitioner's
claim that appellate counsel rendered ineffective assistance be
denied.

   VIII.  Evidentiary Hearing

   Petitioner requests an evidentiary hearing.  (Doc. 1, 8.)

   The decision to grant an evidentiary hearing is generally a
matter left to the sound discretion of the district courts.  28
U.S.C. § 2254; Habeas Rule 8(a); Schriro v. Landrigan, 550 U.S. 465,
473 (2007).  To obtain an evidentiary hearing in federal court under
the AEDPA, a petitioner must allege a colorable claim by alleging
disputed facts which, if proved, would entitle him to relief.
Schriro v. Landrigan, 550 U.S. at 474.

The determination of entitlement to relief, in turn, is limited by 28 U.S.C. § 2254(d)(1) and (2), which require that to obtain relief with respect to a claim adjudicated on the merits in state court, the adjudication must result in a decision that was either contrary to, or an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of facts based on the evidence before the state court. Schriro v. Landrigan, 550 U.S. at 474; Earp v. Ornoski, 431 F.3d 1158, 1166-67 (9th Cir. 2005). In analyzing a claim pursuant to § 2254(d)(1), a federal court is limited to the record that was before the state court that adjudicated the claim on the merits. Cullen v. Pinholster, 131 S.Ct. at 1398.

Here, with respect to claims adjudicated in state court, Petitioner has not shown entitlement to relief under § 2254(d). Thus, the Court is not required to hold an evidentiary hearing. Cullen v. Pinholster, 131 S.Ct. at 1399 (citing Schriro v. Landrigan, 550 U.S. 465, 474 (2007)).

To the extent any of Petitioner's claims was not adjudicated in state court, the state court record precludes a finding of prejudice from any conduct or omissions of Petitioner's trial or appellate counsel. An evidentiary hearing is not required where the state court record resolves the issues, refutes the application's factual allegations, or otherwise precludes habeas relief. Schriro v. Landrigan, 550 U.S. at 474. No evidentiary hearing is required for claims based on conclusory allegations. Campbell v. Wood, 18 F.3d 662, 679 (9th Cir. 1994). Likewise, an evidentiary hearing is not required if the claim presents a purely legal question, there are no disputed facts, or the state court has reliably found the relevant

31

facts.  Beardslee v. Woodford, 358 F.3d 560, 585-86 (9th Cir. 2004);
Hendricks v. Vasquez, 974 F.2d 1099, 1103 (9th Cir. 1992).
Accordingly, an evidentiary hearing is not required.

In summary, it will be recommended that Petitioner's request
for an evidentiary hearing be denied.

IX.   Certificate of Appealablity

Unless a circuit justice or judge issues a certificate of
appealability, an appeal may not be taken to the Court of Appeals
from the final order in a habeas proceeding in which the detention
complained of arises out of process issued by a state court.  28
U.S.C. § 2253(c)(1)(A); Miller-El v. Cockrell, 537 U.S. 322, 336
(2003).  A district court must issue or deny a certificate of
appealability when it enters a final order adverse to the applicant.
Rule 11(a) of the Rules Governing Section 2254 Cases.

A certificate of appealability may issue only if the applicant
makes a substantial showing of the denial of a constitutional right.
§ 2253(c)(2).  Under this standard, a petitioner must show that
reasonable jurists could debate whether the petition should have
been resolved in a different manner or that the issues presented
were adequate to deserve encouragement to proceed further.  Miller-
El v. Cockrell, 537 U.S. at 336 (quoting Slack v. McDaniel, 529 U.S.
473, 484 (2000)).  A certificate should issue if the Petitioner
shows that jurists of reason would find it debatable whether: (1)
the petition states a valid claim of the denial of a constitutional
right, and (2) the district court was correct in any procedural
ruling.  Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

In determining this issue, a court conducts an overview of the
claims in the habeas petition, generally assesses their merits, and

determines whether the resolution was debatable among jurists of reason or wrong.  Id.  An applicant must show more than an absence of frivolity or the existence of mere good faith; however, the applicant need not show that the appeal will succeed.  Miller-El v. Cockrell, 537 U.S. at 338.

Here, it does not appear that reasonable jurists could debate whether the petition should have been resolved in a different manner.  Petitioner has not made a substantial showing of the denial of a constitutional right.

Accordingly, it will be recommended that the Court decline to issue a certificate of appealability.

X.   Recommendations

In accordance with the foregoing analysis, it is RECOMMENDED that:

1) The petition for writ of habeas corpus be DISMISSED and DENIED;

2) Petitioner's request for an evidentiary hearing be DENIED;

3) Judgment be ENTERED for Respondent; and

4) The Court DECLINE to issue a certificate of appealability.

These findings and recommendations are submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after being served with a copy, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served and

filed within fourteen (14) days (plus three (3) days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **September 16, 2014**             **/s/ Sheila K. Oberto**
                                       UNITED STATES MAGISTRATE JUDGE

34